UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EPPENDORF AG<br>    Plaintiff, | * | Civil Action No.: **15-799** |
| | * | |
| VERSUS | * | Judge: |
| | * | **SECT. N MAG 3** |
| TOPSCIEN INSTRUMENT<br>(NINGBO CHINA) CO., LTD<br>    Defendant | * | Magistrate Judge: |
| | * | |

* * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, SEIZURE ORDER AND PRELIMINARY INJUNCTION

Eppendorf AG ("Eppendorf"), through undersigned counsel, respectfully submits this memorandum in support of its *"Motion for Temporary Restraining Order, Ex Parte Seizure Order and Preliminary Injunction"* seeking a ruling pursuant to Federal Rule of Civil Procedure 65 and Lanham Act, § 34(d), 15 U.S.C.A. § 1116(d), prohibiting Topscien Instrument (Ningbo China) Co., Ltd. ("Topscien") from infringing and counterfeiting Eppendorf's trademark and allowing *ex parte* seizure of the counterfeit promotional material and goods.

### I.    FACTUAL BACKGROUND

Eppendorf is a leading life science company that develops and sells instruments, consumables, and services for liquid, sample, and cell handling in laboratories worldwide. (Ex. A, Dec. of Lars Borrmann at 3.) Its products include pipettes, automated pipetting systems, dispensers, and laboratory centrifuges. (Ex. A, Dec. of Lars Borrmann at 4.) Eppendorf owns numerous trademarks worldwide and is the owner of U.S. trademark no. 2,273,634 "MINISPIN"

registered for "lab units, namely, laboratory centrifuges for liquid sampling material" in class 9. (Ex. A to Complaint.)

On March 10, 2015, Dr. Lars Borrmann, the director of marketing for Eppendorf North America, discovered that Topscien representatives at the Pittcon trade fair at the Ernest Morial Convention Center were distributing promotion materials consisting of brochures and a CD advertising a centrifuge under the name "MINISPIN". (Ex. A, Dec. of Lars Borrmann at 6; Ex. B to Complaint.) Dr. Borrmann asked two Topscien representatives, Mr. Bling and Mr. Wong, to cease and desist their infringement. (Ex. A, Dec. of Lars Borrmann at 7.) In response, Mr. Bling and Mr. Wong offered to blacken the promotional material and stop distributing the CD. (*Id.* at 8.) In fact, they showed Dr. Borrmann the blackened promotional material. (*Id.*; Ex. D to Complaint.) However, shortly afterwards, Dr. Borrmann noticed that Topscien was again distributing the infringing promotional material. (Ex. A, Dec. of Lars Borrmann at 8.)

Eppendorf now seeks an *ex parte* temporary restraining order enjoining Topscien from using the MINISPIN mark and a seizure order allowing Eppendorf to seize all of the infringing promotional materials.

## II. LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 65, to obtain a temporary restraining order or preliminary injunction the mover must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *Lake Charles Diesel, Inc. v. General Motors Corp*, 328 F.3d 192 (5th Cir. 2003). Eppendorf meets all four criteria.

2

### A. There Is a Substantial Likelihood that Eppendorf Will Prevail on the Merits

"To succeed in a trademark infringement claim, a party must first show that it has a protectable right in the mark and, second, show that there is a likelihood of confusion between the marks." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

#### i. *Eppendorf Has Protectable Right in the "MINISPIN" Mark*

Eppendorf has a protectable right in the "MINISPIN" mark. Eppendorf's mark is presumptively valid because Eppendorf holds a federal trademark registration for "MINISPIN." Ex. A to Complaint; 15 U.S.C.A. § 1115 (stating registration "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein").

#### ii. *There Is a Likelihood of Confusion between "MINISPIN" and "MINISPIN"*

In determining whether a likelihood of confusion exists, courts consider the following nonexhaustive list of factors: "(1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). "The digits are a flexible and nonexhaustive list", and [t]hey do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the ... factors." *Am. Rice, Inc. v.*

*Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008), quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985).

Here, the Court need not consider all of the digits of confusion because digits 2 and 3 – *i.e.* the similarities between the marks and similarities between the goods – weigh overwhelmingly in favor of finding a likelihood of confusion. *See Paulsson*, 529 F.3d at 309. (holding that where the infringer uses the trademark owner's exact marks, courts need not analyze each of the digits of confusion); *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983) ("Where the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself."); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 (S.D. Tex. 2000) ("[I]n the case of a counterfeit mark, likelihood of confusion is clear.") It is obvious that the marks at issue are identical, and they are being used in connection with identical goods – laboratory centrifuges. (Exs. A-C to Complaint.)

Nonetheless, if the Court looks to the other digits, the determination of a likelihood of confusion becomes even more certain. Eppendorf's goods and Topscien's goods also marketed through the same channels of trade and advertised similarly, as demonstrated by the fact that both Eppendorf and Topscien are currently marketing their products at the Pittcon trade show. (Ex. A, Declaration of Dr. Lars Borrmann at 6.) This demonstrates that digits 4 and 5 weigh in favor of a likelihood of confusion.

Finally, by using an identical mark to identify identical goods in the same channels of distribution, it appears that Topscien consciously intended to trade upon Eppendorf's goodwill. Further demonstrating their ill intent, when confronted with their infringement, Topscien representatives agreed to cease using the MINISPIN mark in their promotional materials, but

4

shortly thereafter resumed using the mark. (Ex. A., Declaration of Lars Borrmann at 7-8.) Given Topscien's clear intent to trade upon Eppendorf's goodwill, digit 7 – defendant's intent – also weighs in favor of finding a likelihood of confusion. *See American Rice*, 518 F.3d at 332, quoting *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703–04 (5th Cir.1981) (stating that "if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity."); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985) ("Bad faith, however, may, without more, prove infringement.")

Based on the foregoing, Eppendorf is likely to succeed on the merits of its trademark infringement claim.

**B.     There is Substantial Threat of Irreparable Harm to Eppendorf**

Loss of control over the quality of the goods being associated with a mark constitutes a substantial threat of irreparable harm. *See Paulsson*, 529 F.3d at 313 (finding a "substantial threat" to trademark owner's goodwill and the value of its mark where the trademark owner had "lost control of the quality of the technology that was being associated with its mark."); *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) ("Quantum Fitness lacks control over how the 'Quantum' mark is being used by Quantum LifeStyle and that Quantum Fitness's potential pecuniary injuries are both unquantifiable and undiscoverable").

The loss of goodwill and reputation caused by trademark infringement cannot adequately be quantified or compensated. *See Bayer Corp. v. Custom Sch. Frames, LLC*, 259 F. Supp. 2d 503, 510 (E.D. La. 2003) ("Trademark infringement, unfair competition, and dilution by their very nature result in irreparable injury since the attendant loss of goodwill, reputation and

business cannot adequately be quantified and the trademark owner cannot adequately be compensated.") The difficulty of quantifying damage to goodwill and lost sales makes a finding of irreparable harm appropriate. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989).

Here, Topscien is promoting its "MINISPIN" centrifuge at the very same trade conference as Eppendorf. Eppendorf clearly has no control over the quality of Topscien's goods and this presents a substantial threat of irreparable harm to Eppendorf. The resulting damage to Eppendorf's goodwill and business reputation cannot be adequately quantified or compensated. In addition, the trade show ends on March 12, 2005, and it is likely that Topscien's representatives will leave this Court's jurisdiction at that time, leaving Eppendorf without any remedy.

    **C.**    **The Threatened Injury to Eppendorf Outweighs Any Damage that the Injunction May Cause Topscien**

The threatened harm to Eppendorf outweighs any harm Topscien may suffer from the grant of injunctive relief. As the court noted in *American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1978), "[o]ne who adopts the mark of another for similar goods acts at his own peril," since he has no claim to the profits or advantages thereby derived. *Id.* at 107. *See also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant may suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."). Furthermore, any potential harm to Topscien would be minimal and economic in nature – *i.e.* loss of its promotional materials.

6

D.     **The Temporary Restraining Order Is in the Public's Interest**

"The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999). Furthermore, as the Fifth Circuit has recognized, trademark laws exist to "protect the consuming public from confusion, concomitantly protecting the trademark owner's rights to a nonconfused public." *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984), quoting *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 277 (7th Cir. 1976). Accordingly, issuing the temporary restraining order is in the public's interest.

E.     **Eppendorf Is Entitled to an *Ex Parte* Temporary Restraining Order**

Federal Rule of Civil Procedure 65 provides that a court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.[1]

Furthermore, when notice would potentially result in the infringing goods and materials being destroyed or moved, notice is not required. *See Matter of Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979) (ordering district court to issue *ex parte* temporary restraining order where infringer was likely to dispose of infringing goods if given notice). The Second Circuit aptly explained the reasoning behind issuing temporary restraining orders in such situations:

> The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state,

---

[1] A certification by undersigned counsel is attached hereto as Exhibit B, pursuant to Rule 65(b).

7

or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all.

*Id.* at 4, quoting Developments in the Law Injunctions, 78 Harv.L.Rev. 994, 1060 (1965).

Here, as demonstrated by the Eppendorf's verified pleading and Dr. Borrmann's affidavit, an *ex parte* temporary restraining order is necessary because Topscien's representatives have already demonstrated their willful disregard of Eppendorf's trademark rights and their willingness to resort to deception in order to continue their willful infringement. Furthermore, a seizure order is necessary in this instance because a temporary restraining order alone will not guarantee compliance by Topscien, and therefore is insufficient to remedy the ongoing irreparable injury to the Plaintiffs.

F. **Eppendorf Is Entitled to an Order Authorizing Seizure of the Infringing Materials**

The Court may also grant an *ex parte* seizure order upon a showing of irreparable injury. 15 U.S.C. § 1116(d). Given that Topscien has already shown its disregard intellectual property rights, a temporary restraining order alone will not guarantee the cessation of infringement by Topscien. Seizure of the promotional materials is not ordered is the only way to ensure that Topscien will not continue to infringe Eppendorf's mark and irreparably harm Eppendorf's goodwill and business reputation. Furthermore, Eppendorf has complied with the procedural requirements of 15 U.S.C. § 1116(d), including: providing notice to the U.S. Attorney of the motion for seizure order; filing a declaration and verified complaint sufficient to support the findings of fact and conclusions of law required for such an order; and agreeing to post security adequate to compensate for any wrongfully seized goods. Eppendorf's proposed order also contains a provision to seal the record in accordance with 15 U.S.C. § 1116(d)(8).

## III.   CONCLUSION

For the foregoing reasons, Eppendorf respectfully requests that this Court grant its *Ex Parte* Motion for Temporary Restraining Order, Seizure Order, and Preliminary Injunction.

Respectfully Submitted,

_____
**Brad E. Harrigan, La. Bar No. 29592**
**Sara C. Eagan, La. Bar No. 34271**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email: bharrigan@lawla.com
Email: seagan@lawla.com
**Counsel for Eppendorf AG**